ALASKA PACIFIC ASSURANCE COM-
PANY, and Insurance Company of
North America, Appellants/Cross-Ap-
pellees,

v.

Eldon COLLINS, d/b/a Elco Construc-
tion, Appellee/Cross-Appellant.

Nos. S-2978, S-2986.

Supreme Court of Alaska.

June 22, 1990.

As Amended on Denial of Rehearing
Aug. 30, 1990.

Mark A. Sandberg, Camarot, Sandberg & Smith, Anchorage, for appellants/cross-appellees.

James A. Parrish and Albert G. Parrish, Parrish Law Office, Fairbanks, for appellee/cross-appellant.

Before MATTHEWS, C.J., and RABINOWITZ, COMPTON and MOORE, JJ.

RABINOWITZ, Justice.

INTRODUCTION.

Alaska Pacific Assurance Company ("Alpac"), and Insurance Company of North America (hereinafter collectively referred to as "Alpac"), appeal from a judgment based on special verdicts in which the jury found Alpac liable for: (1) negligently depriving Eldon Collins of the benefits of an insurance agreement; (2) violating the implied covenant of good faith and fair dealing in denying Collins such benefits; and (3) breaching its contractual duty to provide insurance coverage and to defend Collins.

Collins' claims against Alpac arose out of his construction and sale of a house to the Boxes. After he sold the house, it sunk into underlying permafrost. The Boxes then brought an action against Collins who, after a non-jury trial, was held liable to the Boxes. Collins then instituted this suit against Alpac. The jury awarded Collins $465,174.23 in compensatory damages, and $465,174.23 in punitive damages against Alpac.

Alpac appeals. Collins cross-appeals, claiming that the damages awarded were inadequate. He also challenges the superior court's directed verdict in favor of Alpac on his claim that Alpac was guilty of a fraudulent misrepresentation in not providing insurance coverage for him in regard to the Boxes' damage claims.

FACTS AND PROCEEDINGS.

In 1983, Collins, d/b/a Elco Construction, agreed to sell a parcel of land in the Fairbanks area to William and Mary Box. Collins also contracted to build a house for the Boxes on the parcel. Several months later the house and property were deeded to the Boxes. On April 4, 1985, an attorney for the Boxes contacted Collins to inform him that severe damage was being caused to the house as it settled into the underlying permafrost. The Boxes demanded that Collins return all payments he had received from them. The parties were unable to settle, and the Boxes thereafter filed suit against Collins.

Collins filed a claim with Alpac within a few days of his receipt of the April 4th letter from the Boxes' attorney. His policy with Alpac covered certain types of property damage caused during and upon completion of construction. Specifically, the "Comprehensive General Liability" portion of the policy purported to cover Collins for all liabilities involving property damage and bodily injury, subject to numerous exclusions. "Exclusion N" stated that the policy would not apply "to property damage to the Named Insured's products arising out of such products or any part of such products[.]" (Exclusion N is hereinafter referred to as the "products" exclusion.) "Exclusion 3" denies coverage with respect to "completed operations" for

property damage to work performed by the Named Insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith.

(Exclusion 3 is hereinafter referred to as the "completed work" exclusion.)

1. On July 26, 1985, one of the attorneys for Collins requested that Alpac take over "the de-

Alpac hired an independent adjuster to investigate Collins' coverage claim. After interviewing Collins and conducting an investigation at the house site, the adjuster filed a report with Alpac. Gordon Thomas, an Alpac claims supervisor, then wrote Collins informing him that no coverage for damages to the house would be provided under the Alpac policy. Thomas apparently concluded that the "completed work" and "products" exclusions applied to the claimed damages.[1]

Subsequently, Jane Pell, an Alpac claims superintendent at the company's home office in Philadelphia, advised Thomas that the "completed work" exclusion, and not the "products" exclusion, applied in Collins' case. She noted that Collins' case did not involve a "products claim." Two days after the Boxes filed their lawsuit against Collins, Thomas informed Collins that the "completed work" exclusion relieved Alpac of any duty to provide coverage to Collins for liability arising out of the damage to the Boxes' house. Thomas further advised that Alpac would not provide Collins with defense services in connection with the Box litigation.

Thereafter, Collins' attorney contacted Robert Wainscott, a claims supervisor for Alpac, and informed him that

[The Box–Collins] contract allocates the risk of soil conditions to the [Boxes] and did not require Collins to perform soil tests. As such, any damages suffered by the Boxes did not arise out of work which he performed or was even required to perform. In this light, I fail to see how you can maintain your refusal to defend and cover on the basis that you have.

Counsel for Collins again requested that Alpac take over the defense of the Box litigation, and informed Alpac that "[i]f Mr. Collins suffers a substantial loss, he will look to your company for compensatory and punitive damages."

Wainscott responded that Alpac was giving the "utmost consideration" to Collins' requests for coverage and a litigation de-

fense of this matter," as a lawsuit was being contemplated by the Boxes.

fense. On April 30th Wainscott wrote Collins' attorney to inform him of Alpac's conclusion that a coverage exclusion indeed applied since the house damage arose out of Collins' "work," *i.e.*, his failure to conduct soil testing. Thus, coverage and a defense were again denied Collins pursuant to the "completed work" exclusion.

After a non-jury trial, the superior court entered findings of fact and conclusions of law in the *Box* case. The case against Collins proceeded on three theories: (1) that Collins had breached the implied warranty of workmanlike construction, (2) that Collins had breached the implied warranty of habitability, and (3) that Collins had made an innocent misrepresentation.

The superior court held that the Boxes were entitled to recover from Collins on the innocent misrepresentation claim, concluding that "Defendant Collins innocently misrepresented that his construction technique would cure the problem of permafrost." In regard to this holding the superior court found that

Collins further assured the Boxes that he would excavate deep enough to clear the permafrost and backfill and that there would be no problem.... The Boxes relied on that representation.

The superior court ruled that the Boxes were not entitled to recover on their breach of implied warranty of workmanlike construction claim. Here the superior court found in part that

When Collins constructed the residence, he stripped the overburden and sand down to frozen gravel. He then backfilled and constructed the house.... It is standard practice in the residential construction industry to clear frozen materials and backfill.... Collins did not know nor should he reasonably have known that his construction methodology would lead to the defect here.

The superior court further ruled that the Boxes could recover from Collins for breach of the implied warranty of habitability. In so ruling the court concluded that

There is a defect in the residence sold by Collins to the Boxes.... This defect materially impairs the habitability of the

home.... Nothing in the offers to purchase nor in the oral discussions between the parties constitutes a valid disclaimer of the warranty of habitability.

The superior court also found Collins liable to Pacific Marine Insurance Co., a third-party plaintiff, for a $5,000 bond issued by Pacific Marine. Interest in the amount of $95,179.70 and costs and attorney's fees amounting to $7,461.54 were also awarded to the Boxes. Final judgment in favor of the Boxes against Collins was entered in the amount of $422,641.24.

Collins then brought suit against Alpac. Collins claimed that Alpac was liable for (1) breach of contract, (2) negligent investigation and denial of his claim and request for a litigation defense, and (3) breach of the covenant of good faith and fair dealing in denying coverage and a litigation defense. Collins also sought punitive damages based upon Alpac's denial of coverage, failure to settle with the Boxes, and fraud in representing to Collins that his policy would cover liabilities such as those arising from the damage to the Boxes' house. Finally, Collins claimed that Alpac was liable for costs and attorney's fees expended in both the *Box* litigation and the litigation with Alpac.

The parties subsequently filed cross-motions for partial summary judgment. Alpac argued that summary judgment should be entered in its favor on the issues of policy coverage and punitive damages. Collins requested rulings that Alpac's policy covered the damage caused to the Boxes' house, and that Alpac should be required to pay Collins the full amount of the damage award and attorney's fees in the *Box* litigation.

The superior court denied Alpac's motions, and granted Collins' motion in part. The court ruled

... that Collins' motion is granted and it is established that the damage awards in favor of the Boxes against Collins in *Box v. Collins*, 4FA–85–1909 Civil, are covered by INA's policy of insurance, that INA was obligated to defend Collins in *Box v. Collins*, and that INA is liable to

Collins for his expenses incurred in defending that action./[Pre–Oral App. C] However, the court did not grant Collins' motion that contractual damages be set at the full amount awarded against him in the *Box* litigation ($422,641.24).

The superior court based its partial grant of summary judgment on its conclusions that (1) Collins was covered under the "Products Hazard" portion of the policy; (2) that damage caused by permafrost warming was not excluded as damage caused by Collins' "work"; (3) that damage caused by permafrost warming was not excluded as damage caused by work performed by the "Named Insured"; and (4) that damage caused by the work of the "Named Insured" was not excluded where such damage arose out of the Named Insured's warranty breach.

The superior court directed a verdict against Collins on his claim that Alpac was liable for fraudulent misrepresentation. The court also entered a directed verdict in favor of Collins, holding him entitled to $20,174.23 on his breach of contract claim for which Alpac had been held liable on summary judgment.

This ruling had the effect of denying Collins the opportunity to claim contractual damages for the $422,641.24 judgment entered against him in favor of the Boxes. Collins never paid the Boxes on that judgment, and his liability to the Boxes was extinguished by Alpac's "purchase" of the judgment.[2] The damage figure of $20,174.23 reflects compensation for the non-extinguished $5,000 judgment entered against Collins in favor of Pacmar, a third-party plaintiff in the *Box* litigation, as well as attorney's fees incurred by Collins in the *Box* litigation.

The superior court instructed the jury to determine whether Alpac was additionally liable to Collins in tort for failing to provide coverage and for failing to defend Collins, under theories of (1) negligence, and (2) breach of the implied covenant of good faith and fair dealing.

The jury found by special verdict that Alpac acted negligently and in violation of the implied covenant of good faith and fair dealing in denying Collins both a defense and coverage. As a result, in addition to the $20,174.23 in contractual damages awarded by the superior court by virtue of its grant of partial summary judgment in favor of Collins, the jury awarded Collins the following damages:

(1) $190,000 for "[c]osts and attorney's fees in this case reasonably necessary to obtain the benefits under the policy;"

(2) $150,000 for "[m]ental and emotional anxiety, pain and suffering;"

(3) $50,000 for "[i]mpairment of credit rating;"

(4) $20,000 for "[i]mpairment of reputation as a responsible contractor;"

(5) $10,000 for "[i]mpairment of ability to get insurance and bonding;" and

(6) $25,000 for "[l]oss of past earnings."

These damages totalled $465,174.23. The jury also awarded Collins $465,174.23 in punitive damages. Alpac's subsequent motions for new trial, JNOV, and remittitur were denied.

## I. DID THE SUPERIOR COURT ERR IN DETERMINING ON SUMMARY JUDGMENT THAT ALPAC BREACHED ITS INSURANCE CONTRACT WITH COLLINS BY NOT PROVIDING COVERAGE FOR COLLINS IN REGARD TO THE BOX CLAIM?

The superior court ruled on summary judgment that Alpac breached its contract with Collins by not providing coverage for the Box claim. This court will reverse the superior court's grant of summary judgment only "if the evidence, taken in the light most favorable to [Alpac], poses genuine issues of material fact." *Schneider v. Pay'N Save*, 723 P.2d 619, 623 (Alaska 1986) (citation omitted). Collins' comprehensive liability policy with Alpac generally provided coverage for damage caused by work completed by him. Alpac admits that "if there were no exclusions, the claims against Collins in the underlying case

---

**2.** Following the superior court's grant of partial summary judgment, but prior to trial, Alpac contacted the Boxes and "purchased" their outstanding judgment against Collins for $150,000.

would have been covered." In relevant part, the "Comprehensive General Liability Insurance Coverage" provided that Alpac would cover Collins for "damages because of (A) bodily harm or (B) property damage to which this insurance applies...." Without further defining the scope of coverage, the policy then details numerous exclusions.[3]

The policy also insured Collins for damages arising from "completed operations." While the scope of completed operations insurance is not addressed in the "coverage" portion of Alpac's policy, the term "completed operations hazard" is defined in the "Definitions" section of the policy as follows:

"[C]ompleted operations hazard" includes bodily injury and *property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto,* but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. "Operations" include materials, parts or equipment furnished in connection therewith.

(Emphasis added.) Thus, absent any relevant exclusion, Collins would be covered for the Box claim because the damage arose out of both a completed operation and the Boxes' reliance upon an implied warranty of fitness made with respect to the completed operations.[4]

Collins also contracted for "Products Hazard" coverage. Though this coverage is also not specifically set forth in the coverage portion of the policy, the term "products hazard" is defined as follows:

"*[P]roducts hazard* " includes bodily injury and *property damage arising out of the Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto,* but only if the bodily injury or property damage occurs away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others.

(Emphases added.)

Alpac relies on the "completed work" and "product" exclusions as bases for challenging the superior court's summary judgment ruling that Collins was covered under the policy.[5]

### A. Is Alpac Estopped From Premising its Denial of Collins' Claim on the "Products" Exclusion?

■ Collins argues that Alpac is precluded from relying on the "products" exclusion. The basis for this argument is that throughout this litigation Alpac has taken the position that only the "completed work" exclusion applied. In its instruction number 27, the superior court told the jury that

When an insurance company denies liability on one basis, it waives all defenses to the claim not asserted in its declination. In this case, on August 29, 1985,

---

3. We note that policies with similar coverage provisions will in certain cases lead to reasonable and enforceable expectations of coverage by insureds where the insurer may not have in fact intended to afford such coverage. *See generally Starry v. Horace Mann Ins. Co.,* 649 P.2d 937, 939 (Alaska 1982); *O'Neill Investigations v. Illinois Employers Ins. of Wausau,* 636 P.2d 1170, 1177 (Alaska 1981).

4. *See Lewis v. Anchorage Asphalt Paving Co.,* 535 P.2d 1188, 1196 (Alaska 1975) (in "construction contracts whenever someone holds himself out to be specially qualified to do a particular type of work, there is an implied warranty that the ... resulting building, product, etc. will be reasonably fit for its intended use") (footnote omitted).

5. For purposes of clarity, we restate the content of these exclusions here. The "completed work" exclusion denies coverage

with respect to the completed operations hazard and with respect to any classification stated in the policy or in the manual as "including completed operations," to property damage *to work performed by the Named Insured arising out of such work* or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith.

(Emphasis added.) The "products" exclusion serves to deny coverage for property damage to the *"Named Insured's products arising out of such products* or any part of such products" (emphasis added).

INA relied solely on Exclusion 3. It had no right thereafter to rely on any other exclusion.

Review of the record demonstrates that Alpac consistently maintained that coverage was being denied on the basis of the "completed work" exclusion. On only one occasion did Alpac suggest that any other exclusion might apply.[6] Pell testified at trial that in her opinion only the "completed work" exclusion applied in this case. Moreover, in Alpac's summary judgment briefing it based its argument that Collins was properly being denied coverage solely on the "completed work" exclusion. Finally, during argument on proposed jury instruction number 27, (which provided that Alpac was estopped from justifying its coverage denial on the basis of exclusions other than the "completed work" exclusion), Alpac objected that the proposed instruction was irrelevant, admitting, "we stated our case on [the completed work exclusion], and we lost."

In light of Alpac's failure to rely on the "products" exclusion throughout this litigation, the admission by Pell during trial, and Alpac's attorney's statement during argument on proposed jury instruction number 27, we hold that Alpac is now precluded from relying on the "products" exclusion for purposes of defending against Collins' claim. We regard Alpac's reliance upon the "products" exclusion in this appeal as belated, and thus impermissible. *See Luria Bros. & Co. v. Alliance Assur. Co. Ltd.*, 780 F.2d 1082, 1090 (2d Cir.1986) (insurer may not rely on belated ground for denying coverage); *Armstrong v. Hanover Ins. Co.*, 130 Vt. 182, 289 A.2d 669, 673 (1972); 16C J. Appleman, *Insurance Law and Practice* § 9260, 393–4 (1981).

---

6. On May 9, 1985 Gordon Thomas, an Alpac claims supervisor, informed Collins that "certain express exclusions ... [bar] coverage for damage to *work done* by the insured ..." (an implied reference to the "completed work" exclusion) "... or the *insured's product*" (an implied reference to the "products" exclusion). (Emphases added.) However, Thomas was later informed by Jane Pell from Alpac's home office that only the "completed work" exclusion applied, and in all of Alpac's subsequent correspondence with Collins only that exclusion was referred to. The only other occasion when Alpac referred to the "products" exclusion was after Collins gratuitously mentioned it in his cross-motion for summary judgment on the issue of coverage. In response to Collins' cross-motion, Alpac asserted that it was applicable in this case.

---

B. *Did the Superior Court Err in Concluding on Summary Judgment That The "Completed Work" Exclusion Did Not Apply To The Boxs' Claim?*

An insurance policy will be "construed so as to provide that coverage which a layman would reasonably have expected given his lay interpretation of the policy terms." *Starry v. Horace Mann Ins. Co.*, 649 P.2d 937, 939 (Alaska 1982) (citations omitted). This court will "honor the expectations of the parties as to coverage when those expectations are objectively reasonable." *O'Neill Investigations v. Illinois Employers Insurance of Wausau*, 636 P.2d 1170, 1177 (Alaska 1981). Ambiguities in the policy must be resolved against the insurer, and exclusions are likewise to be interpreted narrowly against the insurer. *Starry*, 649 P.2d at 939 (citations omitted). Finally, to the extent that there are no relevant unresolved or controverted facts, "[t]he construction of an insurance contract is a matter for the court." *O'Neill*, 636 P.2d at 1173.

As noted previously, Alpac admits that but for the exclusions section of the policy, the Boxes' claim would be covered. In relevant part, Collins is entitled to coverage for "[P]roperty damage arising out of [completed] operations or reliance upon a representation or warranty made at any time with respect thereto." The Box house was a warranted, completed operation out of which the underlying damages in this litigation arose.

The corresponding "completed work" exclusion bars coverage where there has been "property damage to work performed by the Named Insured arising out of such work." Thus, where a house is built by an insured contractor, coverage will exist to the extent that damage is caused by exter-

nal forces, and not by forces arising out of the insured's own work.

The crucial question is whether the permafrost damage to the Box house constituted damage arising out of Collins' (the named insured's) work. If the work which caused the damage was not performed by Collins, or if the damage cannot fairly be attributed to work performed by him, then the "completed work" exclusion does not apply and Collins is covered.

Alpac cites *U.S. Fire Insurance Co. v. Colver*, 600 P.2d 1 (Alaska 1979), in support of its view that if damage is caused to a house by settling or sinking, the damage is, by definition, caused by the builder's "work." In *Colver* we had occasion to interpret "product" and "completed work" exclusions which were virtually identical to the exclusions here in question. In *Colver* damage was caused to a house because of, among other things, allegedly "poor" foundation work. *Id.* at 2. The builder's claim was denied by his insurer on the ground that "completed work" and "product" exclusions applied. The superior court ruled against the insurer on the ground that these exclusions were inconsistent with the warranty coverage afforded by the policy. We held on appeal that there was no fatal inconsistency; the "completed work" and "product" exclusions would apply to damages caused "to the insured's work or work product which arise out of his work or work product," even though the work or work product was warranted. *Id.* at 3. We did not rule that the settling of the house was necessarily caused by the builder's "work." That point was not in issue. Rather, we held that the exclusions barring coverage for damage caused to the builder's "work" or "work product" would not be deemed inapplicable merely because the builder's work product was warranted.

We remanded the *Colver* case to the superior court to determine whether the complaint against the builder alleged damages which would be covered by the policy. *Id.* at 4 n. 4.

Alpac also relies on *Gene & Harvey Builders v. Pennsylvania Manufacturer's Association*, 512 Pa. 420, 517 A.2d 910 (1986), where it was held that an exclusion similar to the "products" exclusion in the Alpac policy applied to a settling house. The Pennsylvania court held that the settling of a house was caused by the builder's "product, i.e., a builder's duty to be reasonably prudent in the placement of a house." *Id.* at 913.

In our view *Gene & Harvey* supports the conclusion that, in order for damage to have been caused by the builder's "product", it must have arisen out of a condition which is attributable to the builder's work. *Gene & Harvey* does not support the proposition that the mere settling or sinking of a house automatically triggers the exclusions under consideration here.

Our study of the relevant authorities leads us to conclude that where damage is caused by factors beyond the scope of the insured builder's work, coverage for such damage is not defeated by a "completed work" exclusion. *Accord American Family Mutual Ins. Co. v. Ragsdale Concrete*, 725 S.W.2d 623, 624–25 (Mo.App.1987).

Even if it is determined that the damage to the Boxes' house was the result of construction work within the scope of Collins' general undertaking, the "completed work" exclusion might nonetheless be inapplicable. By its terms the "completed work" exclusion also requires that the work be performed by the "named insured," Collins, and not merely by one "on his behalf." [7]

In view of the foregoing, it must be determined (i) whether the damage to the

7. The requirement that Collins himself perform the work can be inferred from the "completed work" exclusion, and from the language of a broader exclusion which Alpac and Collins agreed to delete from the policy. The "completed work" exclusion applicable in this case requires that, to be excluded, the damage must arise out of work performed by the "Named Insured." This limited exclusion applies because Collins opted to purchase additional coverage called "Broad Form" coverage. Had the

"Broad Form" coverage not been purchased, the policy would have excluded from coverage all damage arising out of "work performed by or on behalf of the Named Insured...." Thus, the parties intended the exclusion to apply only to Collins' work, and not to work performed by others on his behalf. In this connection we observe that two Alpac claims adjusters admitted at trial that this "completed work" exclusion

Box house arose out of the house construction undertaken by Collins and, if so, (ii) whether the work giving rise to damage was performed by the "Named Insured," Collins.

### ■ Did the Damage to the Box Home Arise Out of the Construction Work Undertaken by Collins?

■ Collins contends that permafrost inspection was the Boxes' contractual duty. However, the purchase agreement between the Boxes and Collins provides only that the "[p]urchaser shall have until the beginning of construction to check the land and soil conditions." We do not read this provision as necessarily relieving Collins of the duty to inspect for and remedy potential permafrost problems or to ensure that the house was not situated on permafrost. Whether such was the intention of the parties is a question of fact which cannot be resolved on this record and at this level.[8]

We thus conclude that a question of material fact exists as to whether the damage to the Box house arose out of the work undertaken by Collins. In light of this conclusion, we hold that the superior court erred in granting summary judgment on the ground that the "completed work" exclusion did not apply.

### (ii) Was the Work Which Gave Rise to Damage Performed by Someone Other Than the "Named Insured," Collins?

■ The superior court's grant of summary judgment can be affirmed if Collins is correct in arguing that the work giving rise to damage, if any, was performed by a subcontractor. If this is the case, then the "completed work" exclusion, which applies only to work performed by the "Named Insured," does not preclude coverage.

■ The record contains conflicting statements as to whether Collins performed the foundation and excavation work, or whether this work was performed by a subcontractor. Collins stated that the work was performed by a subcontractor, while statements by individuals working for Alpac indicate that Collins performed the work himself.[9] Assuming a subcontractor was employed to do the excavation, if the subcontractor did not follow Collins' specifications and instead excavated too shallowly or put in defective fill without Collins' knowledge, then the work giving rise to damage clearly was not performed by the named insured and the exclusion could not apply. If, on the other hand, the excavation was performed to Collins' specifications, but the specifications were inadequate to rid the ground of permafrost, then the work giving rise to damage should be viewed to be that of Collins rather than the subcontractor excavator. Given this material factual dispute, we hold that the superior court erred in resolving the issue whether Collins performed the work in question on summary judgment. We therefore reverse the superior court's grant of summary judgment in favor of Collins on the issue of coverage.[10]

---

would not apply to work performed by subcontractors.

8. In *Box v. Collins,* the superior court found in part:

> 16. Prior to the time of the first Offer to Purchase, Exhibit 1, the parties did not discuss nor agree on who would be responsible to test for permafrost.

9. In *Box v. Collins,* the superior court found in part:

> 23. When Collins constructed the residence, he stripped the overburden and the sand down to frozen gravel. He then backfilled and constructed the house.

10. The establishment of Collins' negligence was not a prerequisiste to recovery. Rather, it appears that the Boxes need only have proved that their house was not "habitable" in order to recover, and/or that Collins innocently misrepresented that he would build a habitable house.

The Boxes' satisfaction with these two bases of liability is evidenced by their non-opposition to Collins' post-findings, pre-judgment motion to amend the findings to the effect that prudent excavation procedures were employed on the site of the Box house. Collins admits that he conducted the *Box* litigation with an eye towards seeking indemnification from Alpac. A liability verdict that did not establish negligence on his part would thus serve both his and the Boxes' needs.

## II. DID THE SUPERIOR COURT ERR IN RULING ON SUMMARY JUDGMENT THAT ALPAC BREACHED ITS CONTRACTUAL DUTY TO DEFEND COLLINS ON THE BOX CLAIM?

■ The superior court also ruled on summary judgment that since Alpac's policy afforded coverage to Collins for the damage to the Boxes' house, Alpac had a duty to defend Collins in the *Box* litigation. The policy provides that Alpac will "defend any suit against the insured on account of such bodily injury or property damage, even if any of the allegations are groundless, false, or fraudulent...." In *Afcan v. Mutual Fire, Marine and Inland Ins. Co.,* 595 P.2d 638 (Alaska 1979), we held under a similarly worded policy that, "if the complaint on its face alleges facts which, standing alone, give rise to a possible finding of liability covered by the policy, the insured has the right to a proper defense at the expense of the insurer." *Id.* at 645. An insurer is additionally obligated to defend against a claim based on allegations not within the policy coverage if "the true facts are within, or potentially within, the policy coverage and are known or reasonably ascertainable by the insurer." *Smith v. Great American Ins. Co.,* 629 P.2d 543, 546 (Alaska 1981) (quoting *National Indemnity Co. v. Flesher,* 469 P.2d 360, 366 (Alaska 1970)).

■ The Boxes alleged in their complaint that Collins had breached his duty to build their house in a "workmanlike and non-negligent manner." They also alleged that Collins misrepresented to them that there would be no danger of permafrost damage. Thus, the complaint sets forth allegations indicating fault on the part of Collins. Since Alpac would not be liable for damage to the Boxes' home as a result of Collins' work giving rise to damage, the complaint did not contain allegations which would serve to subject Alpac to liability.

A reasonable investigation of Collins' claim should have apprised Alpac of facts which would have indicated whether the "completed work" exclusion in fact applied to Collins' claim. That is, Alpac should have conducted an investigation aimed at determining whether the damage to the Box house was caused by Collins' work giving rise to damage. Study of the record fails to disclose the extent or results of any such investigation by Alpac prior to making its final decision not to defend Collins. Whether Alpac violated its duty to defend Collins depends upon whether Alpac made reasonable efforts to discover the operative facts and, if such efforts were undertaken, depends further upon the substance of the facts uncovered. *See Smith,* 629 P.2d at 546. We thus conclude that the superior court's grant of summary judgment to Collins on the basis that Alpac had a duty to defend Collins in the Box litigation must be reversed. The record is simply inadequate to permit resolution of this issue on summary judgment.

## III. IS COLLINS ENTITLED TO RECOVER TORT DAMAGES FROM ALPAC?

■ The jury awarded Collins $445,000 in "tort" damages on grounds of "negli-

---

Collins argues in his cross-appeal that the superior court should have relied on the doctrine of reasonable expectations as an alternative basis for its grant of summary judgment. We need not address this argument. Collins concedes that he did not expect coverage for damages caused by faulty workmanship. As indicated above, if his workmanship was not faulty, then he will be entitled to coverage pursuant to the written terms of the policy, as the "completed work" exclusion will not apply. Alternatively, if the damage was caused by his faulty workmanship, there will not be coverage.

The superior court also based its summary judgment on language in the policy granting coverage for damages arising out of warranty work. The policy covers damages arising "out of ... reliance upon a representation or warranty made at anytime with respect to [the operation]." The "completed work" exclusion exempts from coverage all damage caused by Collins' faulty workmanship to his own work. This exclusion is not limited in application to only those instances in which damage is caused to "unwarranted" work, as Collins implies. The limitation on this exclusion urged by Collins is nowhere in the policy language, and Collins presents no extrinsic evidence or argument that such was his reasonable expectation. Insofar as the superior court based its grant of summary judgment on an "unwarranted" work rationale, it erred.

gence" and breach of the implied covenant of good faith and fair dealing. The jury was instructed that Alpac breached its contractual duties to provide Collins with coverage and a defense.[11] The jury was further instructed that Alpac's breach of contract was relevant for purposes of determining whether Alpac should be held liable in tort under both of the theories advanced by Collins.[12] Given our holding that the superior court erred in granting summary judgment to Collins on the issue whether Alpac had breached contractual duties it owed to Collins,[13] these jury instructions were erroneous, and the special tort verdicts in this case must be reversed.

### A. Can Alpac be Held Liable in "Tort" for Negligence in Performing Its Contractural Duties?

■ Alpac argues that even if it breached contractual duties it owed to Collins, Collins' claim in tort for "negligent" breach was improper. Alpac argues that while an insurer may be held liable for torts independent from its contractual duties, such as fraud, an action for negligence in

breaching a specific contractual duty sounds in contract. We agree.

■ Promises set forth in a contract must be enforced by an action on that contract. *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 164 Cal.Rptr. 839, 843, 610 P.2d 1330, 1334 (1980). Only where the duty breached is one imposed by law, such as a traditional tort law duty furthering social policy, may an action between contracting parties sound in tort. *Id.* 164 Cal. Rptr. at 844, 610 P.2d at 1335; *see also Barmat v. John and Jane Doe Partners A–D*, 155 Ariz. 519, 747 P.2d 1218, 1222 (1987).

Collins' claims that coverage was "negligently" denied, and that the denial resulted from a "negligent" investigation by Alpac, sound in contract. In essence, Collins is claiming that he had a contractual right to coverage by Alpac, and that Alpac violated its contractual promise. We decline to hold that where a party breaches a contractual promise "negligently," such conduct may form the basis for a tort action. *Accord Steiner Corp. v. American District Telegraph*, 106 Idaho 787, 683 P.2d 435,

---

**11.** The jury was instructed as follows:

INSTRUCTION NO. 10
The Court has Ruled that ALPAC and INA have breached the contract by:
(1) Refusing to defend Collins in the claims brought by the Boxes and PacMar; and
(2) refusing to provide coverage for the judgments against Collins in favor of the Boxes and PacMar.
These rulings are the law of this case which you must accept for the purposes of this case.
The Court has granted a verdict with respect to the compensatory damages for their breaches in the amount of $20,174.23. This figure includes the PacMar bonding judgment, attorneys fees and costs incurred in the defense of *Box v. Collins*.

**12.** The court's instructions on liability for negligence read in relevant part as follows:

Plaintiff's third theory of recovery is based on negligence in the investigation and denial of defense and coverage in this case. In order for Collins to prevail on this theory, the evidence must establish that it is more likely true than not true:
(1) That INA or ALPAC was negligent; and
(2) that such negligence was a legal cause of damage to Collins.
I will explain what negligence and legal cause mean in a moment.

If you find both of the above things are more likely than not true, then your verdict on this theory must be in favor of Collins. If you find that either of the above things are not more likely true than not true, then your verdict on this theory must be for INA and ALPAC.

. . . .

By selling the insurance policy involved in this case INA and ALPAC undertook an obligation to defend the claims against Collins and assume control of the investigation and settlement of such claims. As a result of its relationship with Collins, INA and ALPAC had a duty to perform these undertakings in conformance with *that degree of skill, knowledge* and care which is required of insurers toward their insureds.
The relevant instructions on the duty of good faith and fair dealing were as follows:
In deciding whether the covenant of good faith has been fulfilled, the focus is on the manner in which the insurer failed to provide coverage or a defense, whether it acted reasonably or with proper cause.
Standing alone, the mere fact that an insurer was in error in denying coverage and a defense does not establish a breach of the covenant of good faith.

**13.** *See infra* Section IV.B.

438–39 (1984) (negligent breach of contractual term actionable in contract); *Uptegraft v. Home Ins. Co.*, 662 P.2d 681, 684 (Okl.1983).

### B. *Can Alpac be Held Liable in "Tort" for Breaching the "Implied Covenant of Good Faith and Fair Dealing"?*

■ A covenant of good faith and fair dealing is an implied component of all contracts as a matter of law. *O.K. Lumber v. Providence Washington Ins. Co.*, 759 P.2d 523, 525 (Alaska 1988). The basis for this duty is a hybrid of social policy and an effort to further the expectations of the contracting parties that the promises will be executed in good faith. Thus, arguments can be made both that a claim for relief based on this covenant sounds in tort, in furtherance of social policy, or is grounded in contract, in furtherance of the implied intentions of the parties.

Due to the unequal bargaining positions which generally exist between insurers and insureds, enforcement of this covenant is particularly important in the insurance context. *State Farm Fire & Casualty Co. v. Nicholson*, 777 P.2d 1152, 1156–57 (Alaska 1989) (quoting Louderback & Jurika, *Standards for Limiting the Tort of Bad Faith Breach of Contract*, 16 U.S.F.L.Rev. 187, 200–01 (1982)). We have held that because of the "special relationship between the insured and insurer," a claim for relief based on the covenant by an insured sounds in tort. *State Farm*, 777 P.2d at 1156–57. Characterizing such actions as sounding in tort, and thereby permitting tort damages, "will provide needed incentive to insurers to honor their implied covenant to their insureds." *Id.* at 1157.

■ Although it was proper for the superior court to permit Collins to sue on the implied covenant of good faith and fair dealing in tort, we must nonetheless reverse the jury's special verdict on this claim. As previously noted, the jury was improperly instructed that Alpac had breached its contractual duties to afford coverage and to defend Collins. "In assessing the effect of an error, 'the members of this court must necessarily put themselves, as nearly as possible, in the position of the jury in order to determine whether, as reasonable [people], the error committed probably affected their verdict.' " *Loof v. Sanders*, 686 P.2d 1205, 1209 (Alaska 1984) (quoting *Love v. State*, 457 P.2d 622, 631 n. 15 (Alaska 1969)).

The gist of Collins' claim in regard to the implied covenant of good faith and fair dealing is that Alpac improperly denied him coverage and a defense. Collins admits that the jury "had to have focused on the ... duty to defend" in concluding that the covenant of good faith and fair dealing had been violated. Thus, we conclude that the erroneous jury instruction which apprised the jury that Alpac had in fact violated its contractual duties to Collins probably affected the jury's verdict regarding Collins' breach of the covenant of good faith and fair dealing claim.

## IV. DID THE SUPERIOR COURT ERR IN DIRECTING A VERDICT AGAINST COLLINS ON HIS TORT CLAIM FOR FRAUDULENT MISREPRESENTATION?

■ Collins claims that the agent who sold him the policy, Frank Mears, fraudulently misrepresented that there would be coverage for the type of damages involved in this case. He also claims that Alpac's failure to produce missing portions of the policy constitutes a fraudulent misrepresentation, although he presents no evidence to indicate that these missing provisions would alter the effect of either the coverage or any relevant exclusions. The superior court directed a verdict against Collins on these issues, finding no evidence of any misrepresentation on Alpac's part.

"To prevail in an action for fraudulent ... misrepresentation the plaintiff must prove the existence of either an affirmative misrepresentation or an omission where there is a duty to disclose." *Matthews v. Kincaid*, 746 P.2d 470, 471 (Alaska 1987) (citations omitted). The only evidence presented by Collins to support his claim of an affirmative fraudulent misrepresentation by Alpac is found in the testimony of

Mears. Mears testified that he did not remember what he told Collins before selling him the policy, but that it was probably, in relevant part, something along the lines of the following synopsis of the policy's provisions:

> Products and completed operations coverage—a product is any product that you manufacture, sell, et cetera. A completed operation is any work that you perform, complete and abandon. The premises and operations coverage is a here and now coverage. It covers today; it covers your ongoing operations. The product or a completed operation is a future event and the products, completed operations liability is there to cover once you have relinquished your product, once you have completed or abandoned your work. *Products, completed operations covers any bodily injuries, property damages that your product or completed operation would cause to a third party.*

(Emphasis added.) Collins testified that this statement is reflective of what Mears told him when selling him the policy, but did not offer his own independent synopsis of Mears' representations during their meeting. While this statement does not clearly inform Collins of the coverage exclusions, it also does not constitute a representation that Collins' work would be covered in a situation similar to the one involved here. In short, this testimony is insufficient to support Collins' contention that "Mears intentionally misrepresented that there was coverage for this type of damage." Thus, we affirm the superior court's grant of a directed verdict against Collins on his affirmative misrepresentation claim.[14]

Collins also argues that Mears' statement constituted an implicit fraudulent misrepresentation, as Mears allegedly omitted adequately to point out the relevant exclusions. Although Mears apparently did not explain the exclusion for damages caused by an insured's work, he testified that his talk with Collins normally would have been concluded as follows:

> It is your duty and responsibility to read the policy so that you understand it. Questions you have can be discussed.

Absent any evidence that Collins asked a question of Mears and was mislead, or that Mears had any intention to commit fraud, Collins' claim for fraudulent misrepresentation must fail.

## V. TO WHAT DAMAGES WILL COLLINS BE ENTITLED IF HE PREVAILS ON REMAND?

The parties also dispute various rulings of the superior court regarding damages. While the issue of damages must be relitigated if liability is found on remand, we will address certain of the parties' claimed errors in order to provide guidance for the retrial.

### A. Is Collins Entitled To Contractual Damages For The Full Amount Of The Box Judgment Entered Against Him?

■ Collins argues on cross-appeal that the superior court erred in denying him contractual damages for the $422,641.24 stipulated damage award entered against him in the *Box* litigation. The superior court awarded Collins only $20,174.23 in contractual damages to compensate him both for attorney's fees incurred during that litigation and for a $5,000 judgment entered against him in favor of Pacmar. After summary judgment was entered in favor of Collins on his breach of contract claim against Alpac, Alpac "purchased" the *Box* judgment against Collins for $150,000, thereby extinguishing it. Collins never paid any money on that judgment to the Boxes. He now argues that Alpac is liable to him for the $422,641.24 judgment. This argument is without merit. Collins cannot claim damages for a loss he will not incur.

### B. Did The Superior Court Err In Permitting The Jury To Award Collins Attorney's Fees Incurred During His Litigation With Alpac?

■ The superior court permitted the jury to award Collins full attorney's fees in

---

**14.** Implicit in our holding is our conclusion that the evidence viewed in a light most favorable to Collins "is such that reasonable persons could not differ in their judgment as to the facts." *Mullen v. Christiansen,* 642 P.2d 1345, 1348 (Alaska 1982) (citations omitted).

his suit against Alpac if the jury found Alpac liable to Collins in tort. The jury thereafter awarded Collins $190,000 in attorney's fees as damages. In addition, the superior court awarded Collins full Rule 82 attorney's fees. Collins argues that an award of full attorney's fees is appropriate as a measure of tort damages where an insurance company denies coverage in bad faith. *See Brandt v. Superior Court,* 37 Cal.3d 813, 210 Cal.Rptr. 211, 213–14, 693 P.2d 796, 799 (1985).

Alaska Statute 09.60.010 provides that, "The supreme court shall determine by rule or order the costs, if any, that may be allowed a prevailing party in a civil action." Pursuant to this authority, we adopted Alaska Rule of Civil Procedure 82, governing awards of attorney's fees. Our trial courts are precluded from awarding fees other than those allowed by "rule or order." [15] Since no other legal basis for the award of attorney's fees is applicable here, we conclude that the superior court erred in permitting the jury to award Collins fees beyond those authorized under Rule 82.

#### C. *Other Damages.*

■ In denying Alpac's motion for a directed verdict, the superior court ruled that Collins could, if the evidence warranted, recover damages for (1) mental and emotional anxiety; (2) impairment of credit rating; (3) impairment of reputation; (4) impairment of ability to obtain insurance and bonding; and (5) loss of earnings. In reviewing these rulings we must determine whether the evidence, when viewed in the light most favorable to Alpac, is such that reasonable people could not differ in their judgment as to the facts. *Mullen v. Christiansen,* 642 P.2d 1345, 1348 (Alaska 1982). Collins cross-appeals, arguing that the superior court erred in limiting Collins' contractual damages to the Pacmar judgment plus attorney's fees arising out of the *Box*

litigation. As discussed previously, these damages amounted to $20,174.23. Our review of the record indicates that the superior court did not err in its rulings on these issues.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings not inconsistent with this opinion.[16]

---

15. There are of course exceptions to the general principle that attorney's fees are to be governed by Rule 82. *See, e.g., Burrell v. Burrell,* 537 P.2d 1, 6–7 (Alaska 1975) (award in divorce action governed by AS 09.55.200); *Manson–Osberg Co. v. State,* 552 P.2d 654, 660 (Alaska 1976) (full, not partial attorney's fees awarded in certain

indemnity cases as matter of public policy). There is no statutory or public policy exception to Civil Rule 82 applicable in this case.

16. Our resolution of this case moots the remaining issues and arguments presented by the parties.