**FAIRBANKS FIRE FIGHTERS ASSOCI-ATION, LOCAL 1324, INTERNATION-AL ASSOCIATION OF FIRE FIGHT-ERS, Appellant,**

v.

**CITY OF FAIRBANKS, Appellee.**

No. S–7415.

Supreme Court of Alaska.

April 11, 1997.

Brett M. Wood, Fairbanks, for Appellant.

Paul J. Ewers, Deputy City Attorney, Office of the City Attorney, Fairbanks, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

COMPTON, Chief Justice.

### I. INTRODUCTION

The Fairbanks Fire Fighters Association appeals from a judgment of the superior court denying it full, reasonable attorney's fees. We affirm.

### II. FACTS AND PROCEEDINGS

The Fairbanks Fire Fighters Association (FFFA) is a labor organization which represents the fire fighters of Fairbanks. FFFA entered into a collective bargaining agreement (CBA) with the City of Fairbanks (City). In the event of a grievance, the CBA required the parties to maintain the *status quo* pending resolution of the dispute.

In August 1991 the City, citing "budgetary constraints," unilaterally limited the number of fire fighters who could be called in on overtime.[1] This action reduced the minimum staffing level of each twenty-four hour shift from eight fire fighters to six.[2] The reduction was not accompanied by any decrease in the services the fire fighters provided.

FFFA immediately filed a grievance under the CBA. FFFA also sought an injunction to compel the City "to provide the funding necessary" to maintain sufficient staffing levels pending resolution of the grievance. The City opposed injunctive relief, arguing that FFFA's claim could not be litigated until arbitration required by the CBA was complete. In addition, the City Manager testified that if the court ordered a return to eight-person minimum shifts, "[the City] could not accomplish it . . . I'd have to close down the department." The City conceded

1. FFFA claimed that the fire fighters brought the suit "to assert and protect not only their private rights and interests in the preservation of their lives, health and safety, but also the preservation of the lives, health, safety and property of the public."

2. The City operates under a "tax cap," which both limits property tax revenue and requires the City to maintain an unencumbered reserve fund equal to its 1988 reserve.

that the decline in Fire Department funding had resulted in increased risks to the public.

The superior court granted a preliminary injunction, finding that the City's action "poses the threat of grave and serious harm to the public" and to the fire fighters. The court also found that the shift reduction "is a mandatory subject of collective bargaining which may not be unilaterally imposed by the [City]." Following that decision, the City rescinded its staffing cuts.

In October 1995 FFFA attempted to recover the actual costs and attorney's fees it had incurred in seeking the injunction. The superior court denied FFFA's request for actual attorney's fees on the grounds that the City had not acted in bad faith and that FFFA was not a public interest litigant. The court did award FFFA, as the prevailing party, partial attorney's fees pursuant to Civil Rule 82 as well as costs pursuant to Civil Rule 79. This appeal followed.

## III. DISCUSSION

### A. The Superior Court's Ruling Regarding Bad Faith Conduct Was Not Clearly Erroneous.

■ The superior court concluded that "there was no vexatious conduct or bad faith by the City which would justify an award of actual attorney's fees." This court will not disturb a lower court's factual determinations unless they are "clearly erroneous." *State Farm Ins. Co. v. American Mfrs. Mut. Ins. Co.*, 843 P.2d 1210, 1213 (Alaska 1992) (superior court's finding that there was no bad faith conduct was not error). "We deem a factual finding to be clearly erroneous when

we are left with a definite and firm conviction on the entire record that a mistake has been made, even though there may be evidence to support the finding." *Brosnan v. Brosnan*, 817 P.2d 478, 480 (Alaska 1991) (citation omitted). While the record reflects conduct which the superior court might conclude was questionable, that conduct does not compel us to conclude that the superior court was mistaken in finding that the City had not acted in bad faith and had not engaged in vexatious conduct.

■ Case law does not delineate precisely between a losing claim and a bad faith claim. Assertion of an unpersuasive defense does not constitute bad faith conduct *per se*. We also have been hesitant to allow excessive attorney's fee awards which might discourage meritorious litigation. *See Malvo v. J.C. Penney*, 512 P.2d 575, 587 (Alaska 1973) (awarding full costs in the absence of bad faith was error, and would be a "serious detriment" to the judicial system). However, when a claim lacks any legal basis, we have not hesitated to reverse a trial court's failure to find bad faith or frivolous conduct. *See Crawford & Co. v. Vienna*, 744 P.2d 1175, 1178 (Alaska 1987) (superior court erred in not finding a suit frivolous when that suit had no legal basis). A "design to mislead or deceive another" also may constitute bad faith conduct.[3]

■ The action for which FFFA seeks its actual attorney's fees arose out of a wilful breach of the CBA by the City.[4] In the course of that litigation,[5] the City Manager testified that the City lacked the funds to restore overtime payments, and would have

3. Black's Law Dictionary includes "a design to mislead or deceive another," as well as a refusal to fulfill a contractual obligation "not prompted by an honest mistake" as to rights or duties, "but by some interested or sinister motive," within the definition of bad faith. *Black's Law Dictionary* 139 (6th ed. 1990).

4. The City was aware that its staffing cuts would trigger a grievance, as indeed they did. Moreover, the City never denied that the CBA required maintenance of the *status quo* pending grievance resolution. Under the CBA, "[w]hen any matter in dispute has been referred to the grievance procedure ... the conditions and provisions prevailing prior to the time the dispute arose shall,

insofar as it is possible and consistent with normal operations, not be changed until the decision is rendered." Thus, under the CBA, whenever arbitration was triggered, the parties were required to maintain the *status quo* during the proceedings. Nevertheless, the City unilaterally imposed the cuts.

5. FFFA initially sought to recover attorney's fees as damages for breach of the covenant of good faith and fair dealing. The court properly rejected that claim on the ground that attorney's fees are unrecoverable as damages. *Ehredt v. DeHavilland Aircraft*, 705 P.2d 446, 452 n. 8 (Alaska 1985) (attorney's fees are not an item of damages).

to close down the Fire Department if FFFA prevailed. The City's attorney carefully noted that the City was not "broke," but simply had not "budgeted" the necessary funds and therefore was unable to fulfill its obligations. Several days later, the City, with no apparent effort, managed to restore funding as required by the preliminary injunction.

The superior court could have concluded that this conduct constituted bad faith. It is clear that the City's representation to the fire fighters, and to the court, that the City would have to close down the Department if the superior court granted the injunction was untrue.[6] Moreover, there is evidence that the City had raised the same defense during similar labor disputes.[7] This evidence could support a finding that the City wilfully asserted a defense it knew to be false. Such an act of deliberate deception would constitute bad faith conduct.

■ Again, however, the evidence does not compel us to conclude that the superior court's finding that the City did not act in bad faith was clearly erroneous. It is not clear from the record what steps the City took to comply with the injunction. Arguably, City authorities allocated the funds necessary to comply with the injunction, and in the absence of that action, the Department might have been closed. If so, the City Manager's claim would have been true when made. As noted, the City's attorney stated that the City was not "broke," and argued that compliance with an injunction would be burdensome, rather than impossible.[8] While the City's "crisis by designation" may have been a bargaining tool as FFFA argues, the record does not point only to that conclusion. Since this action never proceeded beyond the preliminary injunction stage, there is little of record to determine whose version regarding the cuts and the City's compliance with the injunction preponderates. The City Manager's statement might be viewed as less than candid. However, neither that statement, nor other evidence in the record, compels us to hold as clearly erroneous the finding that the City had not acted in bad faith. Trial courts possess substantial discretion regarding attorney's fee awards, and should exercise particular caution in granting full reasonable attorney's fees. *See Malvo*, 512 P.2d at 587. A finding that FFFA had not proven bad faith conduct was not clearly erroneous. Accordingly, we will not disturb the superior court's determination that FFFA is not entitled to full, reasonable attorney's fees under the bad faith exception to Civil Rule 82.[9]

### B. *FFFA Does Not Qualify as a Public Interest Litigant.*

■ "A prevailing public interest plaintiff is normally entitled to full reasonable attorney's fees." *Hickel v. Southeast Conference*, 868 P.2d 919, 923 (Alaska 1994) (citations omitted). To qualify as a public interest litigant, a party must satisfy four criteria:

---

6. It is less clear how a senior City official, who professed detailed knowledge of the City's financial status, could be unaware that his declaration was false.

7. In 1989 the City claimed that it lacked the appropriated funds to pay a three percent raise agreed upon, and that FFFA would either have to abandon the raise or seven fire fighters would be laid off. FFFA refused to abandon the increase, and seven fire fighters were laid off. After arbitration on the issue began, the City "found" the funds to reinstate the laid-off workers.

8. A generous interpretation of the events would be that the City faced a crisis "by designation" in that it earmarked funds in such a way as to place it in a difficult situation.

9. Had we concluded that there was bad faith conduct on the part of the City, FFFA would be entitled to receive full or substantially full fees under Civil Rule 82. *Alaska N. Dev., Inc. v. Alyeska Pipeline Serv. Co.*, 666 P.2d 33, 42 n. 9 (Alaska 1983), *cert. denied*, 464 U.S. 1041, 104 S.Ct. 706, 79 L.Ed.2d 170 (1984). The superior court held that FFFA was precluded from recovering its costs and attorney's fees as an element of damages for the alleged breach of the covenant of good faith and fair dealing. FFFA's contention that Alaska should adopt an additional "bad faith" exception to the common law bar against fee recovery lacks merit, since Alaska already possesses a mechanism for recovery of full reasonable attorney's fees in the event of bad faith on the part of the non-prevailing party. FFFA has presented no compelling reason to create a second mechanism for recovery of attorney's fees, nor does reason suggest any benefits to be gained from doing so. *See Alaska Pacific Assurance Co. v. Collins*, 794 P.2d 936, 949 (Alaska 1990).

(1) Is the case designed to effectuate strong public policies?

(2) If the plaintiff succeeds will numerous people receive benefits from the lawsuit?

(3) Can only a private party have been expected to bring the suit?

(4) Would the purported public interest litigant have sufficient economic incentive to file suit even if the action involved only narrow issues lacking general importance?

*Anchorage Daily News v. Anchorage Sch. Dist.*, 803 P.2d 402, 404 (Alaska 1990).

The superior court denied FFFA public interest litigant status on the ground that FFFA did not satisfy the fourth criterion, lack of economic incentive.[10] We review the superior court's denial of public interest status for an abuse of discretion. *Stein v. Kelso*, 846 P.2d 123, 127 (Alaska 1993) (miners who claimed they were deprived of a property interest without just compensation were not public interest litigants).

 A public interest litigant may have some minimal or indirect personal interest in the outcome of an action, so long as that party's interest is insufficient to provide an incentive to litigate in the absence of public interest concerns. *Anchorage Daily News*, 803 P.2d at 404 (newspaper which brought an action to force disclosure of information required to be public by law was a public interest litigant despite its minor commercial interest in the disclosure of newsworthy information). In *Municipality of Anchorage v. Citizens For Representative Governance*, 880 P.2d 1058 (Alaska 1994), officials challenging a petition to recall them were public interest litigants despite the fact that their offices carried monthly stipends. *Id.* at 1062 (while salary is usually sufficient incentive to prompt suit, normal compensation of elective office does not bar public

interest status, due to "strong public interest in fair and honest elections"). Similarly, in *Kodiak Seafood Processors Ass'n v. State*, 900 P.2d 1191 (Alaska 1995), a party challenging a permit allowing "exploratory" scallop fishing in an area closed to commercial fishing was a public interest litigant because it sought only injunctive relief, its members stood to collect nothing if they prevailed in the action, and the litigation would have no impact on that party's ability to fish in the closed area. *Id.* at 1199. Conversely, if a party has an economic interest which would be sufficient in and of itself to inspire litigation, that party cannot qualify as a public interest litigant. In *Abbott v. Kodiak Island Borough Assembly*, 899 P.2d 922 (Alaska 1995), homeowners who argued that a rezoning scheme would "amount to a taking without just compensation ... 'had sufficient economic incentives to proceed with the litigation without the issues that were also shared by others'" and thus were not public interest litigants. *Id.* at 924. Similarly, in *Acevedo v. City of North Pole*, 672 P.2d 130, 137 (Alaska 1983), a police officer seeking reinstatement had sufficient economic incentive in regaining his job to disqualify him as a public interest litigant.

FFFA's litigation was motivated at least in part by safety concerns. The City conceded that the staffing cuts adversely affected fire safety in Fairbanks. The superior court also noted that the fire fighters themselves faced increased risk as a result of the staff reduction. Moreover, restored overtime funding, the relief which FFFA sought, would address both problems squarely.

 However, FFFA's solution to those safety problems would result in increased overtime payments from the City directly to members of FFFA.[11] Indeed, FFFA argued that if the City truly lacked sufficient funding to make such payments, the suit would be meaningless. If the usefulness of the suit

---

10. FFFA's claim satisfies the other three criteria. The City concedes that the cuts adversely affected public safety. FFFA's action is designed to "effectuate strong public policies" by redressing that danger. Moreover, numerous people threatened by increased fire danger in Fairbanks stand to benefit from FFFA's action. The City concedes that the third requirement is also satisfied.

11. A substantial amount of money was at stake. The City Manager testified that the City's actions had cut average overtime expenditures by $4000 per week. In addition, the superior court required FFFA to post a bond of $32,000 before granting the preliminary injunction.

was contingent on the ability of the City to make payments to FFFA's members, then FFFA was not economically "disinterested" in the litigation. Here, as in *Abbott,* the would-be public interest litigant's attempt to serve a public purpose directly furthered that party's financial interests. In the same way that the plaintiff in *Acevedo* had an economic incentive to regain his job, FFFA's members had an economic incentive to regain overtime payments. While FFFA can argue that such payments were required to address the safety concerns which prompted the action, the members of FFFA clearly had a direct economic stake in the action which exceeded the indirect interests of the litigants in *Kodiak Seafood Processors* and *Anchorage Daily News.*[12]

Since the relief FFFA seeks is direct payment of substantial funds to its members, FFFA would have "sufficient economic incentive to file suit even if the action involved only narrow issues lacking general importance." *Anchorage Daily News,* 803 P.2d at 404. Accordingly, there is ample evidence to support the superior court's finding that FFFA does not qualify as a public interest litigant even though its financial interest in this case is closely intertwined with safety concerns. We will overturn the superior court's determination only if the court abused its discretion. *Stein,* 846 P.2d at 127. We are unpersuaded that it did so.

## IV. *CONCLUSION*

The decision of the superior court is AF-FIRMED.

---

**12.** FFFA argues that its pursuit of injunctive relief, rather than monetary damages, indicates that its interest in this case was safety rather than financial gain. Indeed, in *Kodiak Seafood Processors,* the plaintiffs' request for solely injunctive relief cut in favor of public interest status. *Kodiak Seafood Processors,* 900 P.2d at 1199. However, as noted, the relief FFFA requested consists entirely of renewed payments directly to its members, in marked contrast to the plaintiffs in *Kodiak Seafood Processors,* who received nothing. As a result, the distinction between injunctive relief and damages has little meaning in this context, and this argument lacks merit.