**Donald J. BRAUN, Appellant,**

v.

**ALASKA COMMERCIAL FISHING AND AGRICULTURE BANK,**
**Appellee.**

**No. S–3812.**

Supreme Court of Alaska.

Aug. 2, 1991.

---

C.R. Kennelly, Stepovich, Kennelly & Stepovich, P.C., Anchorage, for appellant.

Robert K. Stewart, Jr. and Barbara Simpson Kraft, Davis Wright Tremaine, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

### I. FACTS AND PROCEEDINGS

On May 5, 1980, the Alaska Commercial Fishing and Agriculture Bank ("Bank"), through its then Chief Executive Officer, Gary Anderson, hired Donald Braun for the position of loan officer in Anchorage.[1] Anderson and Braun were old personal friends, and Braun was on a social trip visiting Anderson when the offer was made. In accepting Anderson's offer Braun resigned from a firefighter's position in California which he had held for eight years.

On June 1, 1982, then President and Chief Executive Officer of the Bank, Forest Paulson, terminated Braun. No reason was given to Braun for his termination at the time of his dismissal. Braun claims the firing was done without cause in violation of his contractual rights. The Bank claims that Braun was an at-will employee. The Bank also claims that it fired Braun as part of its reduction in force to make the Bank more efficient and productive.

Braun thereafter filed a complaint alleging wrongful termination of his contract for employment. Apart from actual damages, Braun also sought punitive damages. In response, the Bank moved for partial

---

1. Some dispute exists as to whether Braun was hired as an officer or as a trainee.

summary judgment on all the tort claims, contending they were barred by the two-year statute of limitations. Braun replied that he was not suing on a tort theory, but rather he sought punitive damages on the contract action, and he sought to have the contract statute of limitations apply. The superior court granted the Bank's motion.

Braun then filed a motion for summary judgment on the breach of contract claim. The court denied Braun's motion holding that a genuine issue of material fact relating to credibility existed. At the same time, the court granted the Bank's cross-motion for summary judgment, finding that no genuine issue of material fact existed regarding the cause of Braun's termination: an economically motivated reduction in force had occurred. The superior court held that economic necessity constituted good cause to terminate Bank employees, including Braun. The superior court also denied Braun's motion for a continuance to conduct additional discovery relevant to the Bank's excuse pursuant to Civil Rule 56(f). Braun now appeals.

II. DISCUSSION: Did the superior court err in granting the Bank summary judgment on its defense of excuse?[2]

Braun claims that insufficient evidence existed by which the superior court could determine that economic factors necessitated a reduction in the Bank's work force. Even if we found the superior court erred in denying Braun's summary judgment motion on the question of whether he was a "for cause" employee,[3] we conclude, upon review of the existing record, that no genuine issue of material fact existed as to the Bank's motivation for terminating Braun.

A. Braun was terminated for economic reasons.

"[A] discharge for 'just cause' is one which is not for any arbitrary, capricious, or illegal reason and which is one based on facts (1) supported by substantial evidence and (2) reasonably believed by the employer to be true." *Baldwin v. Sisters of Providence in Washington, Inc.*, 769 P.2d 298, 304 (Wash.1989). *See also G & M Employment Serv., Inc. v. Commonwealth*, 358 Mass. 430, 265 N.E.2d 476, 480 (1970), *appeal dismissed*, 402 U.S. 968, 91 S.Ct. 1662, 29 L.Ed.2d 133 (1971); *Simpson v. Western Graphics Corp.*, 293 Or. 96, 643 P.2d 1276, 1277–79 (1982) (en banc). The record shows that no genuine issue of material fact existed as to the Bank's economic motivation for Braun's termination, or its belief that such economic need existed.

Braun's termination was one action, among many, indicating the Bank's concern for its financial stability. For example, the Bank's chief lender had placed pressure on it to become more frugal. Edward Crane, President of the Bank, swore that the Spokane Bank for Cooperatives ("SBC") had been a principal source of loan funds for the Bank and had reviewed the Bank's operations. After a meeting between SBC officers and the Bank's Board in August 1981, the Board stated that it perceived that the Bank needed to become more frugal in growth and in expenditures. SBC exercised close supervision over the Bank's

**2.** In reviewing the grant or denial of summary judgment, we determine whether "there are any genuine issues of material fact, and whether the moving party is entitled to judgment as a matter of law." *Drake v. Hosley*, 713 P.2d 1203, 1205 (Alaska 1986). *See also* Alaska R.Civ.P. 56(c). We examine the record and employ *de novo* review. *Grand v. Municipality of Anchorage*, 753 P.2d 141, 143 n. 3 (Alaska 1988). As to whether there are any genuine issues of material fact, we view the facts in the light most favorable to the non-moving party. *Loyal Order of Moose, Lodge 1392 v. International Fidelity*

*Ins. Co.*, 797 P.2d 622, 628 (Alaska 1990) (citing *Drake v. Hosley*, 713 P.2d at 1205).

We note that Braun admits in his reply brief that "[a] decision, based on economic considerations, can be cause for discharge of an employee." Therefore, we need not decide whether economic necessity constitutes good cause.

**3.** Given our agreement with the granting of summary judgment on the Bank's defense, we need not address Braun's other claims of error. However, our review of the record does indicate that a genuine issue of material fact existed as to whether Braun was a "for cause" employee.

fiscal and credit operations throughout the balance of 1981 and 1982.

State government also applied pressure on the Bank to become more frugal. In April 1981, the Board became aware that the Division of Legislative Audit intended to focus on the Bank's expenditures. The report produced after the audit focused the Board's attention on issues of extravagance.

Evidence existed that Forest Paulson, president of the Bank from February 1, 1982, until February 1985, was hired to increase the Bank's efficiency. When being interviewed for the position by the Board, Paulson was asked whether he could "eliminate positions and let people go if necessary to effect a reduction of staff." Frank Homan, a member of the Board from 1979 until 1985, expressed the Board's concern about Anderson's expenditures during his tenure as Chief Executive Officer of the Bank.

Upon arriving at the Bank, Paulson adopted an approach to reduce expenses and increase productivity. This approach included increasing the loan volume handled by each credit officer and adopting recommendations made by a committee of employees directed to assess employee benefit programs. Paulson also sent a memorandum to all employees soliciting suggestions concerning nonpersonnel cost savings. He instituted cost saving initiatives in consultant and other contract costs. Starting in June 1982, Paulson eliminated five positions that would not hurt operational productivity. Paulson also refrained from hiring new employees to fill vacancies. Paulson swore that Braun was discharged as a consequence of the reorganization.

The Board of Directors also demonstrated its concern for reducing expenditures. For example, in August 1981, it passed various resolutions to gain control over spending. At the September 1981 Board meeting, it articulated a new policy on contracts and capital acquisitions to lower expenses. Also, during the recruitment process and afterwards, the Board made it clear to Paulson that it wanted him to cut payroll. Roseleen Moore, a Board member from 1980 until 1986, specifically questioned in April 1981 the necessity for hiring an additional loan officer. We find that no genuine issue of material fact existed on the issue of excuse. The evidence submitted by Braun, viewed in the light most favorable to him, was insufficient to controvert the Bank's evidence of its economic motivation for discharging Braun based on facts it reasonably believed to be true.

Braun cites his own affidavit in challenging the Bank's alleged economic necessity. However, the superior court struck many of these statements as hearsay or as otherwise inadmissible under Civil Rule 56. The Bank successfully argues that this information is improperly in Braun's brief given his failure to appeal the trial court's order granting the Bank's motion to strike. Braun's points on appeal do not mention this point, nor does he argue it in his brief.

Braun's admissible evidence challenging the Bank's defense included his own affidavit stating that the Bank's assets increased in 1980 from $35,000,000 to $80,000,000 in 1981. To the best of his recollection, the number of Bank employees also increased from 1980 to 1981. "There was no economic reduction in the business of the back [sic] for any reason while I worked there." Yet, Braun also acknowledged that he did "not know the day-to-day finances of the bank." Nor did he have evidence to question the validity of the Bank's reorganization policy.

In addition, Braun tries to infer bad faith from the Bank's modification of its personnel policies in May 1982. Yet, employers can modify personnel policies. *See Jones v. Central Peninsula Gen. Hosp.*, 779 P.2d 783, 787 (Alaska 1989). Merely changing the policy, given the surrounding facts regarding concern for the Bank's economic future, does not imply bad faith.

The creation of two loan officer trainee positions in May 1982 was also not inconsistent with the Bank's economic motivation for elimination of Braun's position. Braun earned $44,280 annually at the time of his termination. Only one of the loan officer trainee positions was filled, and that person earned only $18,000 per year. This

loan officer trainee replaced another trainee who resigned in February 1982. Braun's position was later eliminated. The new trainee performed none of the duties previously performed by Braun; those duties were reassigned to other loan officers.

Braun emphasizes that the form submitted to the State Department of Labor Employment Security Division stated that Braun was "discharged" and not laid off for "lack of work." Paulson signed an employer statement specifying the reason for Braun's termination which stated: "[t]his employee was discharged in the best interest of the Bank, and does not imply misconduct or poor performance by the employee." This alone does not give rise to a genuine issue of material fact. This choice was explained by Paulson in an affidavit. He said,

> Because Braun was discharged as a consequence of a reorganization, I informed the State of Alaska, Department of Labor that the termination of his employment did not imply misconduct or poor performance. I further indicated CFAB did not anticipate rehiring Braun. For that reason, I selected the "Discharge" box in the Reasons for Separation section as most appropriate among the options provided on the form. The options of "Quit" and "Labor Dispute" obviously did not apply. I understood the "Lack of Work" selection implied a temporary layoff in which an employee might be rehired. Because Braun's position had been eliminated, I perceived that selection was inappropriate and that the "Dis-

charge" selection most aptly described the circumstances.

The Bank claims that Braun does not tell the court what impermissible motive the Bank had for firing him. The record, however, indicates that Braun believes the motive was personal dislike by Paulson, or his role in supporting a co-employee's equal pay grievance. No evidence supports Braun's allegations for why he was fired. Paulson never told Braun that he did not like him. Braun referred to one snide comment Paulson made to him, although he could not remember what Paulson said. Braun "figured that's the pressures of the job, whatever." Evidence existed that Braun was not terminated due to his support of a co-worker. On June 1, 1982, when Braun was fired, Paulson was not even informed that Braun supported the female loan officer's equal pay complaint.[4] Consequently, there is insufficient evidence upon which to find the court erred in granting summary judgment. The party opposing summary judgment must set forth specific facts showing genuine issues and cannot rest on mere allegations. *See Fomby v. Whisenhunt,* 680 P.2d 787, 792 (Alaska 1984); *KOS v. Alyeska Pipeline Serv. Co.,* 676 P.2d 1069, 1073 (Alaska 1983). Braun rests on just such allegations. Therefore, we affirm the superior court's grant of summary judgment to the Bank on the issue of excuse.

### B.  Braun's Civil Rule 56(f) motion.

■  Braun alleges, albeit very briefly in his opening brief, that the superior court erroneously denied his Civil Rule 56(f)[5] mo-

---

4.  Braun filed a complaint with the Anchorage Equal Rights Commission on September 1, 1982, alleging retaliatory termination. The Commission closed his complaint for failure to cooperate in its investigation and declined to reconsider for the same reason. He also filed a complaint with the Alaska State Commission for Human Rights on December 2, 1982. Its investigation found that,

> Evidence supports respondent's assertion that when Paulson took over as president, he implemented a reorganization plan which resulted in the elimination of several positions, including complainant's. Employment records provided by respondent supported it's [sic] contention that complainant had the

least amount of loan experience of the five loan officers employed with respondent at the time of reorganization.

It also found that the trainee hired to fill a loan officer trainee position after Braun was fired earned only $18,000 per year. Consequently, the Equal Employment Opportunity Commission found that "[n]o reasonable cause was found to believe that the allegations made in your charge are true...."

5.  Civil Rule 56(f) states:

> (f) **When Affidavits Are Unavailable.** Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential

tion to engage in more discovery on the Bank's defense of excuse. This issue is omitted from Braun's points on appeal. After the Bank argued that this issue was abandoned, Braun tried to resuscitate the appeal of the denial in his reply brief. He cites *In re B.L.J.*, 717 P.2d 376, 381 n. 5 (Alaska 1986), and *Winn v. Mannhalter*, 708 P.2d 444, 449 (Alaska 1985), for the proposition that "[i]f the issue has been briefed and the appellee and the Court are sufficiently informed of the matters in issue, the Court may consider the point raised in the brief," even if absent from the points on appeal. Here the issue was not under a separate heading in Braun's opening brief, and he allocates only a couple of sentences to it and no argument. Because the issue was absent from his points on appeal, and because the issue was insufficiently briefed in his opening brief, Braun has abandoned it. *See* Alaska R.App.R. 210(e); *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 528 (Alaska 1980). Attention to the issue in a reply brief does not resuscitate it. *Hitt v. J.B. Coghill, Inc.*, 641 P.2d 211, 213 n. 4 (Alaska 1982).

▮ Even if we choose to reach the merits of the denial of additional discovery, the trial court did not abuse its discretion. *Munn v. Bristol Bay Housing Authority*, 777 P.2d 188, 193 (Alaska 1989). Plenty of evidence exists that Braun was on notice that the Bank would argue his termination stemmed from a reduction in force. Braun knew of the Bank's reduction in force defense as early as October 1982 when Paulson responded to Braun's discrimination complaint filed before the Anchorage Equal Rights Commission. The Bank's position was maintained consistently throughout those proceedings, as well as in proceedings before the Alaska State Human Rights Commission. Braun's deposition

clearly indicates that his counsel knew of this defense by July 13, 1988, approximately thirteen months before the Bank filed its cross-motion for summary judgment. Given that Braun conducted no discovery on this issue at all, Braun was dilatory and it was not an abuse of discretion to deny him the benefit of Rule 56(f). *See Jennings v. State*, 566 P.2d 1304, 1313–14 (Alaska 1977) (Alaska R.Civ.P. 56(f) will not be liberally applied to aid parties who have been dilatory); *Munn*, 777 P.2d at 193. [6] As the superior court had before it Braun's reasons to grant the Rule 56(f) motion, and the Bank's various reasons to deny it, including Braun's inexcusable neglect, we do not find an abuse of discretion occurred.

## III. CONCLUSION

We affirm the superior court's grant of summary judgment to the Bank on its defense of excuse.

AFFIRMED.

---

to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**6.** Braun argues that the burden of proof under *Eales v. Tanana Valley Medical–Surgical Group, Inc.*, 663 P.2d 958 (Alaska 1983), was on the Bank to prove the excuse of economic necessity. *Eales* did not discuss the burden of proof issue. In *Arco Alaska, Inc. v. Akers*, 753 P.2d 1150, 1155 (Alaska 1988), we expressly reserved judg-

ment on allocation of the burden of pleading and proving good cause in an action for termination of an employment contract for an indefinite term. In *Skagway City School Bd. v. Davis*, 543 P.2d 218, 222–24 (Alaska 1975) *overruled on other grounds, Diedrich v. City of Ketchikan*, 805 P.2d 362 (Alaska 1991), we held that the employer had the burden of proof and pleading regarding good cause in an employment contract for a definite term. While we realize the nature of Braun's employment contract is a disputed question of material fact, we find his actions to be dilatory under either scenario.