**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JULIE SHERIDAN, | No.   21-16717 |
| Plaintiff-Appellant, | D.C. No. 2:20-cv-00126-APG-DJA |
| v. | |
| CAESARS ENTERPRISE SERVICES, LLC, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted June 15, 2022
San Francisco, California

Before:  S.R. THOMAS, GOULD, and BEA, Circuit Judges.

This case is an appeal of the district court's grant of summary judgment in favor of Appellant's employer who terminated her employment "for cause" after a night of alcohol-fueled incidents during a company-sponsored event. Appellant challenges her termination, claiming that her employer violated the terms of the employment contract and since she was terminated without proper "cause," she is

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

entitled to a severance package. The district court disagreed and found in favor of the employer.

Caesars Enterprise Services, LLC ("Caesars") hired Appellant, Julie Sheridan, as a Director of Strategic Account Management in June of 2017. Caesars hired Appellant for a thirty-six month term of employment under the terms of an Employment Agreement ("Agreement"). Appellant was a manager of a Caesars marketing team and reported to Caesar's Chief Sales Officer, Michael Massari. It was Appellant's responsibility to "leverage relationships in an effort to increase [Caesars'] meetings and events business more than just being transactional around a precise meeting and event."

On August 7, 2019, while at a Caesars-sponsored team meeting event ("Vegas Event") in Las Vegas, Appellant and other Caesars employees met for a company dinner. After dinner, Appellant and her coworkers went to several other bars. While at the various locations, Appellant was seen grabbing a whole bottle of alcohol with the cap on it and putting it in her mouth, offering shots to bartenders, putting an uncapped bottle of alcohol in her mouth then pouring shots out of the same bottle, and saying "f**k IME East[1]." This last incident was captured on video and posted in a group chat viewed by other Ceasars employees.

---

[1] In Market East ("IME") is another Caesars marketing team.

After the night ended and the employees parted ways, the front desk at the hotel where the Caesars employees were staying received a call from a hotel guest, worried about an intoxicated female being taken to her room by a male. Hotel security responded to the call and found the intoxicated female, one of Appellant's team members, lying on the bed disrobed under a blanket. Hotel security spoke with the male, another of Appellant's team members, who said that he was there to help his female team member.[2] Hotel security concluded that the woman needed medical treatment and paramedics took the young woman to a hospital. Hotel security received Appellant's name from the male since she was the one in charge of the group for the event, however, Appellant did not answer immediately when hotel security tried to contact her as she had gone to sleep several hours earlier.

After returning to the office, Appellant spoke with Caesars' Chief Sales Officer and Caesars initiated an investigation of the incidents that took place during the Vegas Event, including the photos and videos of Appellant. As part of the investigation, Caesars executives met with Appellant to discuss her actions on the night of the Vegas Event and suspended Appellant. On August 15, 2019, Caesars executives terminated Appellant's employment.

---

[2] Hotel security made several attempts to make contact with the room's occupants, but the male answered the door only after multiple attempts.

On November 21, 2019, Appellant filed suit for breach of contract in Clark County District Court asserting a claim for breach of contract, alleging Caesars terminated her without "cause" as defined in the Agreement. Caesars removed the case to the United States District Court for the District of Nevada. After discovery, Appellant and Caesars filed cross-motions for summary judgment. Caesars argued it did have "good cause" based on Appellant's actions during the Vegas Event. The District Court granted Caesars' motion, and entered judgment in favor of Caesars. Appellant appeals the district court's grant of summary judgment in Caesars' favor.

We review a district court's grant of summary judgment de novo. *Bravo v. City of Santa Maria,* 665 F.3d 1076, 1083 (9th Cir. 2011). "Viewing the evidence in the light most favorable to the non-moving party, we determine whether any genuine issues of material fact exist and whether the district court correctly applied the substantive law." *Buchanan v. Watkins & Letofsky, LLP*, 30 F.4th 874, 877 (9th Cir. 2022). We will grant summary judgment if there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)).[3]

---

[3] The language from *Anderson v. Liberty Lobby, Inc.* quoted above is addressing a prior version of Fed. R. Civ. P. 56(c), which required for summary judgment that there be no genuine issue of material fact. The current version of Fed. R. Civ. P. 56(c) has modified the standard to ask if there is a genuine dispute of a material fact. That language change has no effect here.

Under Nevada law, proper termination for "cause" "is one which is not for any arbitrary, capricious, or illegal reason and which is one based on facts (1) supported by substantial evidence and (2) reasonably believed by the employer to be true." *Southwest Gas Corp. v. Vargas,* 111 Nev. 1064, 901 P.2d 693, 700 (Nev. 1995) (quoting *Braun v. Alaska Com. Fishing & Agric. Bank*, 816 P.2d 140, 142 (Alaska 1991)). "[T]he employer is the ultimate finder of facts constituting good cause for termination," unless the employer contractually agreed to allow "some other arbiter" to make the "cause" determination. *Id.*

Appellant argues that the *Vargas* standard does not apply to fixed-duration contracts like the one at issue in this case. We agree with the district court that *Vargas* applies here. The *Vargas* court explicitly contemplated the application of its factfinding-delegation holding to express contracts by conditioning it on the absence of "an *express* or implied agreement contracting away" factfinding authority. *Id.* (emphasis added). The court reinforced the reach of its holding by noting that "the employer's decision to terminate must be consistent with its contractual prerogatives; the employment contract may subject an employer's termination authority to relevant policy provisions defining or limiting the term 'good cause,' or to defined procedures that the employer must follow prior to termination." *Id.*

Under the Agreement here, "cause" for termination included "any act of willful or gross misconduct, insubordination or dishonesty on the part of the

5

Employee which causes or threatens to cause harm to the Company or any affiliates, as determined in the reasonable exercise of discretion by the Company."

Applying *Vargas* here, Caesars is the trier of fact that determines "cause" under the terms of the Agreement. The Agreement does not contain any contractual provision delegating the "cause" factfinding to any other arbiter. In fact, several of the "cause" provisions explicitly assign factfinding authority to Caesars. After a thorough internal investigation, review of photos and videos, and review of the police report, Caesars concluded that Appellant's actions fostered an environment that promoted excessive alcohol consumption, interfered with her ability to lead her team, and hindered her ability to respond to a serious incident. Given Appellant's actions and the fact that Caesars' "cause" determination was not arbitrary, capricious, or otherwise illegal, we affirm.

**AFFIRMED.**